KATHRYN N. NESTER, Federal Public Defender (#13967)
DAPHNE A. OBERG, Assistant Federal Public Defender (#11161)
**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF UTAH**
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah   84101
Telephone: (801) 524-4010

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| DAMEON NESTOR MONTOYA,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **REPLY IN SUPPORT OF PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Civil No. 1:16-cv-00084 TC<br>Criminal No. 1:12-cr-00030 TC |

In its response, the government raises two procedural arguments before making its substantive arguments.  But none of the arguments change the fact that the Court should grant Mr. Montoya's § 2255 motion.  First, with regard to the procedural arguments, there can be no question Mr. Montoya's sentence rested on the residual clause of § 4B1.2.  Simply by showing his offense no longer qualifies as a crime of violence after *Johnson*, Mr. Montoya established his sentence was based on the residual clause.  And because *Johnson* is a substantive, new rule, Mr. Montoya is entitled to retroactive relief.

With regard to the substance of Mr. Montoya's petition, although the government claims Mr. Montoya's prior Utah offense of assault by a prisoner is a crime of violence, this offense lacks any requirement that force be used or threatened against the person of another.  Thus, it

cannot be considered a crime of violence after *Johnson*.  Likewise, the government's claim with regard to Mr. Montoya's attempted murder conviction is based largely on its incorrect contention that an offense enumerated in the commentary of the guidelines qualifies as an actual enumerated offense, even post-*Johnson*.

## TABLE OF CONTENTS

I.    Mr. Montoya established both that his sentence rests on the residual clause and that *Johnson* applies retroactively to challenges brought on collateral review under the sentencing guidelines.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    By showing his offenses no longer qualify as crimes of violence, Mr. Montoya sufficiently established his sentence was based on the residual clause... . . . . . . . 3

    B.    *Johnson* is a substantive rule applying retroactively to guideline claims; the law allows no other approach.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   Neither Utah assault by a prisoner nor Utah attempted murder can be classified as crimes of violence because the statutes contains no element of violent, physical force.. . . . . . . 14

    A.    Utah assault by a prisoner cannot be a crime of violence because it does not require the use or threatened use of force against a person... . . . . . . . . . . . . . . . 15

        1.    *Castleman*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.    Utah's attempted murder statute does not require the use or attempted use force against a person—and "attempt" in Utah is overbroad.. . . . . . . . . . . . . . . . . . . . 25

        1.    That murder was listed in the commentary to § 4B1.2 has no effect because the commentary was meant to assist with the now-defunct residual clause and has no independent definitional value.. . . . . . . . . . . . . . . . . . 26

    C.    The government uses the modified categorical approach improperly.. . . . . . . . . 31

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

I.      **Mr. Montoya established both that his sentence rests on the residual clause and that** *Johnson* **applies retroactively to challenges brought on collateral review under the sentencing guidelines.**

The government first argues Mr. Montoya failed to meet his burden to establish the Court relied on the residual clause at sentencing and that Mr. Montoya failed to establish *Johnson* applies retroactively to guideline claims raised collaterally.  Neither of these arguments has merit.

     A.     By showing his offenses no longer qualify as crimes of violence, Mr. Montoya sufficiently established his sentence was based on the residual clause.

The Court should reject the government's claim that Mr. Montoya is not entitled to relief under *Johnson* because there is no finding in the record that the Court relied upon the residual clause to enhance his sentence.  Because Mr. Montoya can show his sentencing range no longer stands after *Johnson*, it does not matter what was said or not said at sentencing or in the presentence report.

Before *Johnson*, a conviction qualified as a crime of violence only if it satisfied the force clause of § 4B1.2(a)(1), the enumerated offenses clause of § 4B1.2(a)(2), or the residual clause of § 4B1.2(a)(2).  Because *Johnson* invalidated the residual clause, any conviction that does not qualify as a crime of violence after *Johnson*—but was considered a crime of violence before *Johnson*—necessarily falls under the residual clause.  Otherwise, even after *Johnson*, the offense would still qualify as a crime of violence under one of the remaining clauses.  Thus, if a prior conviction no longer qualifies as violent after *Johnson*, it necessarily falls under *Johnson*'s umbrella.

The government correctly notes that the presentence report in Mr. Montoya's underlying case does not explicitly show the Court relied upon the residual clause to find his prior offenses

were crimes of violence.  However, presentence reports never indicate *why* a given offense was legally considered to be a crime of violence.  And there is no sentencing transcript available in this case.  Even if a transcript existed, in *In re: Chance*,[1] the Eleventh Circuit detailed the problems with requiring a petitioner to produce record proof he was sentenced under the residual clause, calling such a requirement "unworkable."[2]  First, the circuit noted that "unless the sentencing judge uttered the magic words 'residual clause'" at sentencing years before, such an approach would allow (if not require) the court to ignore the state of the current law.[3]  Rather than accounting for cases like *Mathis v. United States*[4] and *Descamps v. United States*,[5] the sentencing court would be left relying upon its original determination of whether an offense qualified as a crime of violence—before new opinions were issued—thereby disregarding recent precedent.  Instead, applying the law as it now stands, if a court determines an offense does not qualify as a crime of violence:

> Such a determination necessarily would mean that this . . . conviction could *only* have counted as a crime of violence under the residual clause in the past, irrespective of what the sentencing judge said or did not say.  In other words, such a ruling would be conclusive proof that "[the defendant] was sentenced using the residual clause."[6]

---

[1] ___ F.3d ___, 2016 WL 4123844 (11th Cir. Aug. 2, 2016).

[2] *Id.* at *4.

[3] *Id.*

[4] 136 S. Ct. 2243 (2016).

[5] 133 S. Ct. 2276 (2013).

[6] *In re: Chance*, 2016 WL 4123844, at *4 (citation omitted).

This is the only workable approach, particularly where nothing in the law requires a court to indicate which clause of any crime of violence definition (enumerated, force, or residual), it relied upon in imposing a sentence. Whether the court uttered the phrase "residual clause" or "force clause" at sentencing would be nothing more than a matter of pure happenstance. Thus, requiring a movant to provide record proof the court relied upon the residual clause would hinge her eligibility for § 2255 relief "solely on a chance remark."[7] "Surely this 'selective application of new rules violates the principle of treating similarly situated defendants the same.'"[8] District courts, including courts in the District of Utah,[9] have relied on similar reasoning to conclude a petitioner need not prove the court specifically relied on the residual clause.[10]

---

[7] *Id.* at *5.

[8] *Id.* (quoting *Teague v. Lane*, 489 U.S. 288, 304 (1989)).

[9] *See, e.g.*, *Jaramillo v. United States*, No. 1:16-cv-87, at 7 (D. Utah Oct. 13, 2016) (Mem. Dec.) (finding that because "petitioner's convictions do not fall under either the enumerated offense clause or the force clause" they "must fall within the residual clause") (attached as Exhibit A); *Andrews v. United States*, No. 2:16-cv-501, at 10 (D. Utah Sept. 9, 2016) (Mem. Dec.) (noting court was unpersuaded by government's argument that movant failed to carry burden to show sentence rested on residual clause) (attached as Exhibit B); *Culp v. United States*, No. 2:16-cv-672, at 13 (D. Utah Sept. 27, 2016) (Mem. Dec.) (finding government approach "unworkable") (attached as Exhibit C); *Broadbent v. United States*, No. 2:16-cv-569, at 4–5 (D. Utah Oct. 11, 2016) (Mem. Dec.) (disagreeing with government's reasoning) (attached as Exhibit D).

[10] *See, e.g.*, *United States v. Ladwig*, ___ F. Supp. 3d ___, 2016 WL 3619640, at *3 (E.D. Wash. Jun. 28, 2016) (finding petitioner "successfully demonstrated constitutional error simply by showing that the Court might have relied on an unconstitutional alternative"); *Gibson v. United States*, 2016 WL 3349350, at *1–2 (W.D. Wash. Jun. 15, 2016) (unpublished) (concluding that where record does not specify which clause was used to support enhancement, "it must be assumed that [the petitioner] was sentenced under the residual clause"); *see also* *United States v. Navarro*, 2016 WL 1253830, at *3 (E.D. Wash. Mar. 10, 2016) (unpublished) (refusing to "assume, without an explicit finding," that judge relied on anything other than residual clause to find priors were violent felonies).

Here, the fact that Mr. Montoya's convictions cannot be classified as crimes of violence after *Johnson* means his sentence was enhanced under the unconstitutional residual clause; thus, he has established his motion falls under *Johnson*.  The government also asserts that the fact that one of Mr. Montoya's convictions was listed in the commentary to the guideline § 4B1.2 means the residual clause was not in play.  However, as explained in section II(B)(1) below, this fact has no significance and is not entirely accurate.

B.    *Johnson* is a substantive rule applying retroactively to guideline claims; the law allows no other approach.

Despite acknowledging *Johnson* applies to the sentencing guidelines,[11] and that it announced a new, substantive rule of law,[12] the government argues *Johnson* is a standard procedural rule when applied to the guidelines.  In other words, the government tries to limit the Supreme Court's holding in *Welch v. United States*[13]—that *Johnson* is a substantive rule with retroactive effect—to the ACCA.  Mr. Montoya agrees that under *Teague v. Lane*,[14] a "new rule" only has retroactive effect in collateral cases if it is either a substantive rule or a watershed rule of criminal procedure.  But in *Welch*, the Supreme Court quite clearly found the *Johnson* rule to be substantive.  This Court should reject the government's request that it undertake a novel

---

[11] *See* Doc. 10, at 8 (" [T]he Tenth Circuit applied the rationale of the Supreme Court in *Johnson* and determined that the residual clause of Sentencing Guidelines § 4B1.2 is also unconstitutionally vague.").

[12] *See id.* at 7 ("In *Welch v. United States*, the Supreme Court held that *Johnson* announced a new substantive rule of constitutional law . . . .").

[13] 136 S. Ct. 1257 (2016).

[14] 489 U.S. 288 (1989).

approach to retroactivity and find that because *Johnson* is substantive, it applies retroactively to all cases on collateral review.

The government urges the Court to undertake a context-specific inquiry to determine whether a rule should have retroactive effect in a particular class of cases as opposed to whether it should have retroactive effect in all cases. But the government cites no authority for this approach.[15] The Supreme Court has never declared a rule substantive for some applications but not others, and has never recognized such a thing as "contextual retroactivity" or "partial retroactivity."[16] A rule is either substantive or it is not, as a categorical matter.[17] Adopting the government's unheard-of third option—where a rule is retroactive sometimes but not others—would contradict decades of established retroactivity jurisprudence. *Teague* itself held that a new rule must be "applied retroactively to *all* defendants on collateral review" or not applied retroactively at all.[18] Since then, the Supreme Court has consistently reaffirmed that retroactivity is "a categorical matter,"[19] and new, substantive rules "must be applied in . . .

_____

[15] *Cf. In re: Hubbard*, 825 F.3d 225, 234 (4th Cir. 2016) ("[T]he government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another.").

[16] *Cf. United States v. Hawkins*, No. 8:13-cr-343, 2016 WL 3645154, at *10 (D. Neb. June 30, 2016) (unpublished) ("The court is not aware of any case that supports the proposition that a rule can be substantive in one context but procedural in another."); *see also Tyler v. Cain*, 533 U.S. 656, 668–69 (2001) (O'Connor, J., concurring) ("[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review.").

[17] *United States v. Doe*, 810 F.3d 132, 154 n.13 (3d Cir. 2015).

[18] 489 U.S. at 316 (emphasis in original).

[19] *Davis v. United States*, 564 U.S. 229, 243 (2011).

*all* federal habeas corpus proceedings."[20]  The retroactivity inquiry does not involve a context-dependent assessment into how the rule is being invoked.

The government's attempt to characterize *Johnson* as a procedural rule is foreclosed by *Welch*, which explicitly rejects the possibility that *Johnson* is procedural.[21]  *Welch*'s explanation of what makes a rule substantive holds even when *Johnson* is applied to the guidelines.  *Welch* makes clear that retroactivity depends upon the nature of the rule, not the context of its application.  The substantive character of *Johnson* does not change, regardless whether it is applied in an ACCA or a guideline case.  Rather than limiting its holding or reasoning to ACCA cases, the *Welch* Court made clear the relevant categories for retroactivity purposes are "categories of decisions" that are "substantive rules" or "watershed rules of criminal procedure"—and the cases to which those rules retroactively apply are "cases on collateral review."[22]  Because *Johnson* is a substantive, new rule, it can be raised in all cases on collateral review to which  *Johnson* applies.[23]

---

[20] *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) (emphasis added).

[21] *See Welch*, 136 S. Ct. at 1265 ("[T]he rule announced in *Johnson* is substantive."); *id.* ("*Johnson* is a substantive decision."); *id.* ("*Johnson* is not a procedural decision."); *id.* ("*Johnson* is thus a substantive decision and has retroactive effect under *Teague* in cases on collateral review.").

[22] *See Teague*, 489 U.S. at 315–16; 28 U.S.C. § 2255(f)(3), (h)(2).

[23] *See Danforth*, 552 U.S. at 266 ("New constitutional rules announced by [the Supreme] Court that [are substantive] must be applied in . . . all federal habeas corpus proceedings."); *Davis*, 131 S. Ct. at 2430 (retroactivity is "categorical matter"); *Teague*, 489 U.S. at 316 (holding that new rules must be applied retroactively to all "similarly situated" defendants).

8

*Johnson*'s substantive alteration of § 4B1.2 is obvious:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that-
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[24]

Remember, the government concedes *Johnson* had this effect on the substance of the guidelines.[25]  *Welch* makes clear this change is not procedural: "even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause."[26]  Because the residual clause is invalid under *Johnson*, "it can no longer mandate *or authorize* any sentence"[27] —not even in a guideline case that is already final.

At a full *Johnson* resentencing, the procedure will remain unchanged.  If ordered to do so, the United States Probation Office will prepare an updated presentence report.  The parties will have the chance to object to the new guideline calculation and make arguments under 18 U.S.C. § 3553(a).  The defendant will have the chance to allocute.  And the Court will impose a new sentence.  The only real difference at resentencing will be substantive—after *Johnson*, the Court may not impose a sentence under § 4B1.2 and § 2K2.1(a)(2).  While the parties will make sentencing recommendations as they did before (no procedural change there), the substance of those recommendations will be drastically different, as the government will be not be able to

---

[24] USSG § 4B1.2(a) (edited to remove residual clause per *Johnson*).

[25] *See* Doc. 10, at 8.

[26] 136 S. Ct. at 1265.

[27] *Id.* (emphasis added).

argue Mr. Montoya should be resentenced under § 2K2.1(a)(2).  While it is true that *Johnson*, as applied to the guidelines, does not alter the statutory limits for sentencing set by Congress for the crime, it *does* alter who may be punished under § 2K2.1(a)(2) and § 4B1.2.  Thus, *Johnson* constrains the substance, not the procedure, of sentencing under the guidelines.

Relatedly, the government insists *Johnson* must be procedural when applied to the guidelines because a court will still have discretion to impose the same sentence at a *Johnson* resentencing.  While this is theoretically possible, it does not change the nature of the rule in *Johnson* because a court can reach the same sentence only after applying different substantive laws than it did originally.  That this change is substantive is clear from *Montgomery v. Louisiana*,[28] which decided whether the holding in *Miller v. Alabama*[29] was retroactive.  *Miller* held that mandatory life without parole for juvenile offenders violated the Eighth Amendment. In *Montgomery*, Louisiana argued (as does the government here) that *Miller* was procedural "because it did not place any punishment beyond the State's power to impose."[30]  The Court rejected this argument, finding that just because a court may reach the same result at a resentencing hearing does not change the substantive nature of the rule.[31]

The fact that a defendant might receive the same sentence as originally imposed in a *Johnson* resentencing in a guideline case does not change the fact that all offenders sentenced

---

[28] 136 S. Ct. 718 (2016).

[29] 132 S. Ct. 2455 (2012).

[30] 136 S. Ct. at 734.

[31] *See id.* ("The fact that life without parole could be a proportionate sentence for the latter kind of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right.").

under an unconstitutional guideline have been deprived of a substantive right.  At a *Johnson* resentencing, because a court cannot apply the enhanced guideline range it used originally, chances are high the post-*Johnson* substantive change to the guidelines will lead to a lower sentence.  "That some—realistically, few—offenders would receive the same sentence, with or without the career offender classification, does not undermine the substantive character of the rule at issue here."[32]

The government ignores the pre-*Johnson* authorities that consistently applied ACCA decisions retroactively to the guidelines.[33]  It also fails to acknowledge that when ACCA decisions were applied to the guidelines in other contexts, it conceded retroactivity[34]—or to explain why it has now changed its position.  At the same time, the government ignores the fact

---

[32] *United States v. Ramirez*, ___ F. Supp. 3d ___, 2016 WL 3014646, at *9 (D. Mass. May 24, 2016).  The *Ramirez* court also noted that "only two percent or fewer of the sentences imposed constituted upward departures in every year since *Booker*."  *Id.* at *7.  The court took this to mean that, "in practice, the upper limit of the Guidelines range acts as a ceiling for the vast majority of sentences imposed by federal district court judges, making a career-offender designation the equivalent of an increase in the statutory maximum."  *Id.* at *8.

[33] *See United States v. Doe*, 810 F.3d 132, 154 & n.13 (3d Cir. 2015) (holding that *Begay v. United States*, 553 U.S. 137 (2008) applies retroactively in guideline cases, and noting that "[u]nder *Teague*, either a rule is retroactive or it is not"); *Narvaez v. United States*, 674 F.3d 621, 625-26 (7th Cir. 2011) (holding that *Begay* and *Chambers v. United States*, 555 U.S. 122 (2009), are "substantive decisions that 'prohibit[] a certain category of punishment for a class of defendants because of their status or offenses,'" and thus apply retroactively in guideline cases); *Brown v. Caraway*, 719 F.3d 583, 594–95 (7th Cir. 2013) (applying *Begay* retroactively to guideline challenge); *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011) (holding that decision limiting definition of burglary under ACCA is substantive and applies retroactively in guideline cases because "it altered the conduct that substantively qualifies as burglary under the categorical approach"); *Rozier v. United States*, 701 F.3d 681 (11th Cir. 2012) (taking it "as a given," that Supreme Court's decision narrowing ACCA's force clause "is retroactively applicable" in guideline cases).

[34] *See, e.g.*, *Narvaez*, 674 F.3d at 625 (noting concession that *Begay* and *Chambers* are retroactive in guideline case).

that even before *Welch*, the Supreme Court vacated and remanded several cases involving

collateral attacks to guideline sentences based on *Johnson*,[35] and the fact that even before *Welch*,

the Sixth and Seventh Circuits authorized collateral challenges to guideline sentences because

*Johnson* announced a new substantive rule that is "categorically retroactive."[36]  Since *Welch*,

courts around the country are rejecting the government's selective theory of retroactivity, finding

*Johnson* is a substantive rule that applies retroactively to sentences imposed under the residual

clause of § 4B1.2.[37]

    The government likewise entirely fails to acknowledge the Tenth Circuit's precedential

decision in *In re: Encinias*.[38]  In *Encinias*, the court concluded that *Welch* made the new rule of

---

[35] *See Jones v. United States*, 136 S. Ct. 333 (2015) (vacating denial of § 2255 motion in *Jones v. United States*, 597 Fed. App'x 1064 (11th Cir. 2015)); *Denson v. United States*, 135 S. Ct. 2931 (2015) (vacating denial of § 2255 motion in *Denson v. United States*, 569 Fed. App'x 710 (11th Cir. 2014)); *Wynn v. United States*, 135 S. Ct. 2945 (2015) (vacating denial of § 2255 motion in *Wynn v. United States*, No. 13-4167 (6th Cir. Oct. 10, 2014)); *Jones v. United States*, 135 S. Ct. 2944 (2015) (vacating denial of COA to appeal § 2255 motion in *United States v. Jones*, No. 14-2882 (3d. Cir. Feb. 20, 2015)).

[36] *See Price v. United v. States*, 795 F.3d 731, 734 (7th Cir. 2015); *In re Watkins*, 810 F.3d 375, 383–84 (6th Cir. 2015).

[37] *See, e.g.*, *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) (rejecting government argument that retroactive application of *Johnson* to guidelines is procedural); *In re Patrick*, ___ F.3d ___, 2016 WL 4254929, at *4 (6th Cir. 2016) (same); *Gibson v. United States*, 2016 WL 3349350, at *2 (W.D. Wash. Jun. 15, 2016) (slip. op.) (holding that "*Johnson* announced a new substantive rule and substantive rules may be retroactively applied to collaterally attack the career offender residual clause of the Sentencing Guidelines"); *United States v. Boone*, 2016 WL 3057655, at *6 (W.D. Penn. May 31, 2016) (slip. op.) (holding that "the retroactivity holding in the *Welch* case applies to Boone, such that he is entitled to challenge his sentence collaterally"); *United States v. Suttle*, 2016 WL 3448598, at *5 (E.D. Wash. Jun. 20, 2016) (slip. op.) ("[T]he *Johnson* rule is a new substantive rule and thus the *Teague* bar does not apply.").

[38] 821 F.3d 1224 (10th Cir. 2016).

constitutional law recognized in *Johnson* retroactive to cases on collateral review.[39]  The court did not question whether a rule declared retroactive is retroactive in *all* cases.  The only question the court considered was whether—for purposes of the rule governing permission to file a successive petition—the movant's challenge was based upon *United States v. Madrid*,[40] where the Tenth Circuit found *Johnson* applies to guideline cases, or upon *Johnson* itself.  On this question, the court concluded, as a *prima facie* matter, that the movant's challenge was based on *Johnson*, but left the final determination of the question to the district court.[41]  With respect to retroactivity, however, the court left nothing open.  The *Encinias* court's holding requires district courts to give *Johnson* retroactive effect in guideline cases.

Although the government attempts to imbue the Supreme Court's grant of certiorari in *Beckles* with foreboding significance regarding the retroactivity question, the Court likely granted certiorari to correct the one singular circuit that has decided *Johnson* does not apply to the guidelines[42] (—a decision an entire panel of judges from the same circuit criticized in a published concurrence as a "mistake" even while feeling duty-bound to reject a habeas application on those grounds).[43]  No circuit has held *Johnson* applies to the guidelines—but not retroactively.  And both circuits to discuss guideline retroactivity post-*Welch* have made clear *Johnson* is a

---

[39] *Id.* at 1226.

[40] 805 F.3d 1204 (10th Cir. 2015).

[41] *Encinias*, 821 F.3d at 1226.

[42] *See United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015).

[43] *See, e.g.*, *In re: Hunt*, ___ F.3d ___, 2016 WL 3895246, at *11 (11th Cir. 2016) (Wilson, J., Rosenbaum, J., & Pryor, J., concurring).

substantive rule applying retroactively to the guidelines.[44]  In light of *Welch* and *Encinias*, and all previous retroactivity jurisprudence, there is no reason *Johnson* should or could be considered substantive in one context but procedural in another.  The government's theory of selective retroactivity finds no support in case law.  Thus, this Court should follow the lead of the numerous district courts, including courts in this district,[45] that have found *Welch* means what it says and says what it means,[46] and hold *Johnson* applies retroactively to Mr. Montoya's case.

## II.   Neither Utah assault by a prisoner nor Utah attempted murder can be classified as crimes of violence because the statutes contains no element of violent, physical force.

In its substantive argument, among other things, the government argues assault by a prisoner in Utah is a crime of violence under the force clause of § 4B1.2, and that attempted murder is a crime of violence because it is enumerated in the commentary to this guideline section.  The government also contends, without argument, that the modified categorical

---

[44] *Hubbard*, 825 F.3d at 227 (finding substantive reach of sentencing guidelines was altered in *Johnson* and that *Johnson*, therefore, applies retroactively in guideline cases); *Patrick*,___ F.3d ___, 2016 WL 4254929, at *3 (6th Cir. 2016) ("The Supreme Court's rationale in *Welch* for finding *Johnson* retroactive applies equally to the Guidelines.").

[45] *See, e.g.*, *Andrews*, No. 2:16-cv-501, at 9 (Exhibit B) ("The Court agrees . . . that in light of *Welch*, *Johnson*'s application to the Guidelines is a substantive rule, which applies retroactively . . . ."); *Culp*, No. 2:16-cv-672, at 13 ("[T]he Court finds [that] the rule announced in *Johnson* is substantive as applied to the Guidelines.") (Exhibit C); *Broadbent*, No. 2:16-cv-569, at 6 ("[T]he court concludes that *Johnson* applies retroactively to the sentencing guidelines . . . .") (Exhibit D).

[46] *See, e.g.*, *United States v. Bercier*, ___ F. Supp. 3d ___, 2016 WL 3619638, at *4 (E.D. Wash. June 4, 2016) ("[A] substantive, retroactive rule narrowing the definition of 'crime of violence' under ACCA is retroactive to identical Sentencing Guidelines provisions, regardless of how the *Teague* framework might operate when applied independently in the Sentencing Guidelines context."); *United States v. Dean*, 169 F. Supp. 3d 1097, 2016 WL 1060229, *16 (D. Ore. Mar. 15, 2016) (explaining that "a rule that is substantive in the first context is substantive in the second context" and applying *Johnson* retroactively in guideline case); *Hawkins*, 2016 WL 3645154, at *10 (holding that "a rule that is substantive in the statutory context is substantive in the Guidelines context").

approach is proper in this case.  But the government has failed to establish this, and the manner in which the government tries to use this approach is improper.  With or without the modified categorical approach, neither Utah's assault by a prisoner statute nor its attempted murder statute can categorically be considered crimes of violence.

> A.    Utah assault by a prisoner cannot be a crime of violence because it does not require the use or threatened use of force against a person.

In making a claim that Utah's assault by a prisoner statute qualifies as a crime of violence under the force clause, the government questions Mr. Montoya's reliance on *Leal-Rax* and *Perez-Vargas*.[47]  However, the government's arguments against these cases rely in part upon an inapplicable case, *United States v. Castleman*.[48]  Put simply, the offense cannot qualify as a crime of violence because, following the principles in *United States v. Perez-Vargas*[49] and as stated in *United States v. Leal-Rax*,[50] it contains no element of force.[51]

---

[47] Doc. 10, at 21.

[48] 134 S. Ct. 1405 (2014).

[49] 414 F.3d 1282 (10th Cir. 2005).

[50] 594 Fed. App'x 844 (5th Cir. 2014) (unpublished).

[51] The government argues Mr. Montoya's *mens rea* arguments are undercut by *Voisine v. United States*, 136 S. Ct. 2272 (2016).  Specifically, the government argues *Voisine* abrogates decades of jurisprudence finding recklessness insufficient to satisfy the force clause.  *See* Doc. 10, at 19.  However, in *Voisine*, the Court *expressly limited the reach* of its decision: "[O]ur decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior.  Courts have sometimes given those two statutory definitions divergent readings *in light of differences in their contexts and purposes*, and we do not foreclose that possibility with respect to their required mental states." 136 S. Ct. at 2280 n.4 (emphasis added).  It cannot be said that *Voisine* abrogates the Tenth Circuit precedent clearly stating crimes cannot qualify as violent offenses if they have a *mens rea* of recklessness where the Supreme Court explicitly left that precedent untouched.  However, even though *Voisine* has no effect on this precedent, Mr. Montoya is no longer pursuing his argument that Utah's assault by a prisoner statute is not a crime of violence because of its recklessness *mens rea*.

Other than its misplaced reliance on *Castleman* and its claim that the Fifth Circuit's rationale in *Leal-Rax* is somehow lacking, the government suggests no basis for the Court to find Utah's assault by a prisoner statute requires as an element, violent, destructive, intentional, physical force be used, threatened, or attempted against the person of another.

The government attempts to minimize the impact of *Leal-Rax* by claiming the court did not give sufficient consideration to the force requirement of the statute or to the holding in *Castleman*.  This seems to be but another way for the government to say it simply does not agree with the findings of the court in *Leal-Rax*, because nearly the entire decision analyzed the force requirement of Utah's assault statute—and found it lacking.[52]  The same assault statute at issue in *Leal-Rax* underlies Utah's assault by a prisoner statute.   In short, the *Leal-Rax* court concluded Utah's assault statute is fatally flawed in that it "does not necessarily require that the unlawful force or violence be directed 'against the person of another' for creation of a risk of injury."[53] Among other things, the *Leal-Rax* case relied upon a Utah State case, *State v. Wareham*,[54] concluding the statute was too broad because, for example, a person could use a dangerous weapon against property in a way that created a risk of injury.[55]  In *Wareham*, the Utah Appeals Court, citing to the risk and threat portions of Utah's underlying assault statute, found the act of

---

[52] *See id.* at 847–50.

[53] 594 Fed. App'x at 850.

[54] 2006 UT App 327, 143 P.3d 302 (Utah Ct. App. 2006).

[55] 594 Fed. App'x at 849–50.

tearing things off the wall and ransacking a house in the victim's presence was sufficient to constitute assault.[56]

But this cannot be enough.  Using force against property, even if doing so with the intent to cause bodily injury, is not the same as intentionally using or threatening to use force against the person of another.  Under this approach, an inmate could use force to damage furniture in the prison, intending to cause injury and creating a risk of injury.  Or an inmate could leave an obstacle for a guard to trip over in the night—with the same intent.  While these acts may violate the assault statute, they do not require violent, physical force to be used or threatened against another person.  As such, they fall under the umbrella of *Perez-Vargas*.  Indeed, in *Perez-Vargas*, the Tenth Circuit recognized a similar factual scenario would not qualify as a crime of violence: "intentionally placing a barrier in front of a car causing an accident."[57]  Because the language of the assault by a prisoner statute allows for possibilities outside the realm of the use or threatened use of violent, physical force, the offense cannot categorically qualify as a crime of violence.

Although the government claims "well-reasoned, published decisions on point" show assault by a prisoner in Utah is a crime of violence,[58] the only decisions it cites to that address the statute are unpublished and lack persuasive value.  Primarily, the government relies upon *United States v. Tahguv*,[59] a pre-*Johnson* opinion.  But because of the manner in which the issue was raised, the *Tahguv* opinion fails to inform.  The *Tahguv* defendant's appeal brief was filed before

---

[56] 2006 UT App 327, ¶ 30.

[57] 414 F.3d at 1286.

[58] Doc. 10, at 22.

[59] 264 Fed. App'x 719, 723 (10th Cir. 2008) (unpublished).

the Tenth Circuit as an *Anders* brief.  When an attorney files an *Anders* brief, if she "conscientiously examines a case and determines that any appeal would be wholly frivolous, counsel may 'so advise the court and request permission to withdraw.'"[60]  In other words, an *Anders* brief is a bare bones listing of the issues the attorney considered along with an assertion from the attorney that such issues are wholly frivolous, accompanied by a request to withdraw as counsel. Thus, in *Tahguv*, defense counsel did not raise or argue the merits of whether assault by a prisoner qualified as a crime of violence.[61]  Indeed, the attorney declared the argument frivolous.  And the government declined to file a responsive brief at all.[62]  Because of this posture, not only is *Tahguv* not "well-reasoned," it contains *no reasoning at all*.  The issues were never presented or argued. The opinion with regard to assault by a prisoner simply echoes the words written by withdrawing counsel.  Where, normally, an unpublished opinion might have persuasive value, *Tahguv* has none.

For the same reason, *Ama v. United States*,[63] the other unpublished case cited by the government, has no significance here.  In *Ama*, the district court relied wholly on *Tahguv* to find assault by a prisoner to be a crime of violence.  The *Ama* opinion contains no separate analysis of the statute and no acknowledgment of the posture of *Tahguv*.  Needless to say, both *Tahguv* and *Ama* lack precedential value.  And while unpublished circuit opinions may at times have persuasive value, an opinion can only persuade if the issue for which it was cited is argued and briefed by the

---

[60] *Id.* at 721 (quoting *Anders v. California*, 386 U.S. 738, 744 (1967)).

[61] *See* Appellant Br. in *Tahguv* (attached as Exhibit E).

[62] *See*  Letter to Elizabeth A. Shumaker, Clerk, from Diana Hagen, Assist. U.S. Att'y (Oct. 11. 2007) (attached as Exhibit F).

[63] 149 F. Supp. 3d 1323 (D. Utah 2016).

parties and the resulting opinion contains relevant analysis.[64]  Because none of this is true in *Tahguv*

and *Ama*, neither case illuminates this issue.  *Leal-Rax*, however, does provide guidance, while

*Perez-Vargas* is precedential.  And both cases show that Utah's assault by a prisoner statute does

not qualify as a crime of violence under the force clause.

     *1.*     *Castleman.*

With regard to the government's *Castleman* reference, because the Supreme Court

explicitly and repeatedly limited *Castleman* to its context, it has no effect on *Leal-Rax*.  Likewise,

*Castleman* in no way affected the holding of *Perez-Vargas*—that a conviction based on proof the

defendant caused injury does not necessarily entail proof of violent, physical force.[65]  *Castleman*'s

holding was limited to the definition of "force" in 18 U.S.C. § 922(g)(9), a completely different

statutory provision.

At issue in *Castleman* was whether the force necessary to establish a misdemeanor crime of

domestic violence under § 922(g) was proven merely by the causation of injury.  The Supreme

Court held that "[i]t is impossible to cause bodily injury without applying force in the common-law

sense."[66]  However, the force clause of § 922(g)(9) is critically different from the clause applicable

here.  As the government acknowledges,[67] the Supreme Court interpreted "force in the common-law

sense."  This significantly differs from the type of violent force required under § 4B1.2 and the

---

[64] *Cf. United States v. Heineman*, 767 F.3d 970, 974 (10th Cir. 2014) (rejecting government reliance on a case because where "[t]he parties' briefs did not cite *Black*, nor did our opinion," the case "could hardly stand as this court's interpretation of *Black*").

[65] *Perez-Vargas*, 414 F.3d at 1287.

[66] 134 S. Ct. at 1415.

[67] *See* Doc. 10, at 20, 21, 22.

ACCA.  The *Castleman* Court's focus on *common-law* force was explicit: the Court explained that in *Johnson I* (the Court's 2010 *Johnson* decision),[68] it "declined to read the common-law meaning of 'force' into ACCA's definition of a 'violent felony.'"[69]  In *Castleman*, the Court held true to this approach, rejecting Justice Scalia's invitation to hold that all injuries under the misdemeanor statute "necessitate violent force, under *Johnson's* definition of that phrase."[70]  The Court specified:

> The Courts of Appeals have generally held that mere offensive touching cannot constitute the "physical force" necessary to a "crime of violence," just as we held in *Johnson* that it could not constitute the "physical force" necessary to a "violent felony."  Nothing in today's opinion cases doubt on these holdings, because—as we explain—"domestic violence" encompasses a range of force broader than that which constitutes "violence" *simpliciter*.[71]

The *Castleman* Court explained at great length that the common-law definition of "physical force" applied to § 922(g)(9) starkly differed from that of the ACCA's force clause, which requires *violent*, felony, physical force.  In the explicitly limited context of common-law force, the Court held physical injury necessarily requires at least *de minimis* force.[72]  Thus, after *Castleman*, Utah assault by a prisoner could require force "in the common-law sense" but still never reach the level of violent force or threat of violent force required by the ACCA and § 4B1.2.

The government also misconstrues *Castleman*'s discussion of "the manner that physical force may be employed."[73]  After articulating the level of force required by § 922(g), the *Castleman*

---

[68] *Johnson v. United States*, 559 U.S. 133 (2010).

[69] *Castleman*, 134 S. Ct. at 1410 (quoting *Johnson*, 559 U.S. at 145).

[70] *Id.* at 1414.

[71] *Id.* at 1412 (citation omitted).

[72] *Id.* at 1410, 1413–15.

[73] Doc. 10, at 20–21.

Court rejected the defendant's claim that a person could cause injury without using any force at all, for example, by surreptitious poisoning.[74]   However, this discussion of "use" of force and the distinction between direct and indirect force in no way changes the reach of *Castleman*'s holding that proof of injury establishes only the use of "force in the common-law sense," not in the violent sense required by the ACCA and § 4B1.2.   Put differently, while after *Castleman*, it cannot be said the causation of injury does not prove a degree of force, this force may still be only common-law force—a "mere offensive touching."[75]   Poisoning, for example, may generically mean force was used, but this force is *de minimis*—as opposed to the use or threat of serious, violent force required to qualify an offense as a crime of violence.   To prevail in this case, the government must establish that "the causation of bodily injury necessarily entails violent force."[76]   This, it cannot do, before or after *Castleman*.

The government cites a Seventh Circuit case, *United States v. Waters*,[77] in support of the idea that *Castleman* affected the crime-of-violence definition in the sentencing guidelines.   But *Waters* fails to establish this.   In *Waters*, the court started by noting that three different times previously, it had ruled that the exact statute challenged by the defendant was a crime of violence.[78]   The court noted that in each case, it had found the intentional causation of bodily harm necessarily

---

[74] 134 S. Ct. at 1415.

[75] *Id.*

[76] *See id.* at 1413.

[77] 823 F.3d 1062 (7th Cir. 2016).

[78] *Id.* at 1064.

proved physical force.[79]  The defendant asked the court to, instead, follow the approach of the

Second, Fourth, Fifth, and Tenth circuits that have taken the opposite approach—finding statutes

requiring an intent or threat to cause bodily harm do not include force as an element.  The court

declined this invitation, noting that "the existence of a circuit split is not a reason, on its own, to

overturn precedent."[80]  In other words, the court's own long-standing precedent required it to reach

this conclusion.  While, *in dicta*, the court did cite *Castleman* in support of the idea that poisoning

requires the use of force (something the Seventh Circuit had previously assumed), it did not find

*Castleman* changed the state of the law or the altered its approach in any way.[81]  Unlike the Seventh

Circuit, the Tenth Circuit found in *Perez-Vargas* that a conviction based on proof the defendant

caused injury does not necessarily entail proof she used violent physical force.[82]  And it is this

existing precedent—this side of the circuit split—that this Court must follow.

 As a final note on *Castleman*, in *United States v. Fennell*,[83] the United States District Court

for the Northern District of Texas recently rejected arguments mirroring those the government has

tried to make here.  Among other things, the government argued *Castleman* invalidated the Fifth

Circuit's "reasoning for distinguishing between statutes that require force and those that require

---

[79] *Id.*

[80] *Id.* at 1065.

[81] *Id.* at 1066.

[82] 414 F.3d at 1286.

[83] No. 3:15-cr-443 (N.D. Tex. Sept. 8, 2016) (Mem. Dec.) (attached as Exhibit G).

causation of bodily injury."[84]   Analyzing the government's arguments, the court found the

government's reliance on these cases to be "misplaced."[85]

> The essence of the Government's Motion is that the Supreme Court in *Castleman*
> and *Voisine* expanded the definition of "force" to include lesser conduct that
> intentionally knowingly, or recklessly causes bodily injury without using "violent
> force."   *Castleman* and *Voisine*, however, did not deal with the issue of whether a
> state conviction constituted a "violent felony" under § 924(e)(2)(B)(I) of the ACCA.
> They instead dealt with whether the defendants' prior convictions under state law
> qualified as a "misdemeanor crime of domestic violence" as that term is used in 18
> U.S.C. § 922(g)(9).[86]

Because of this, the court found that the Supreme Court in *Castleman* merely rejected the

lower court's application of *Johnson I*'s definition of physical force (as violent force) in the

misdemeanor crime of violence context.[87]   But "[i]n doing so, the Court *did not* abrogate *Johnson*

*[I]* or call into doubt its definition of 'physical force' under the ACCA as requiring 'violent

force.'"[88]   This Court should follow the well-reasoned approach in *Fennell*.[89]

 Notably, the *Castleman* opinion was issued more than eight months before the *Leal-Rax*

opinion, so the Fifth Circuit had the full benefit of *Castleman* at the time it decided *Leal-Rax*.  If the

---

[84] *Id.* at 2 (internal quotations omitted).

[85] *Id.* at 3.

[86] *Id.*

[87] *Id.* at 4.

[88] *Id.* (emphasis added).

[89] *See also Bennett v. United States*, No. 1:16-cv-251, 2016 WL 3676145, *3 (D. Maine July 6, 2016) (slip. op.) (internal citations omitted) ("Rather, the logic and language of the Supreme Court's 2014 decision in *Castleman* make clear that the statutory interpretation of § 921(a)(33)(a) and § 924(e)(2)(B)(I) must be undertaken separately.  In *Castleman*, the Supreme Court gave multiple reasons for distinguishing *Johnson I*'s [559 U.S. 133 (2010)] interpretation of § 924(e)(2)(B)(I) from the interpretation of the identical "physical force' language in § 921(a)(33)(A).").

Fifth Circuit thought *Castleman* applicable, it undoubtedly would have said so.  Further, the *Leal-Rax* court is not alone in its approach.  Even after *Castleman*, a number of other courts have reached the same conclusion about other assault statutes.[90]  For instance in *Whyte v. Lynch*,[91] the First Circuit reviewed an assault conviction under Connecticut law for purposes of § 2L1.2. Connecticut's assault statute required an intent to cause physical injury coupled with the causing of such injury.[92]  The court found it problematic that the statute punished conduct resulting in physical injury rather than the "use of physical force."[93]  The court criticized the government's reliance on *Castleman* and the underlying assumption that "the use or attempted use of physical force" has the same meaning for § 921(a)(33)(A) as it does in § 16(a).[94]  Concluding that "the use to which the statutory definition is put informs the definition itself" and "the two statutes serve different

---

[90] *See, e.g.*, *Whyte v. Lynch*,  807 F.3d 463, 470–71 (1st Cir. 2015) (rejecting *Castleman* argument and finding Connecticut assault is not crime of violence); *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085–87 (9th Cir. 2015) (finding New Jersey aggravated assault is not crime of violence because it can be committed recklessly and because it criminalizes "attempts" to cause serious bodily injury); *United States v. Hernandez-Rodriguez*, 788 F.3d 193, 198, 200 (5th Cir. 2015) (finding Louisiana aggravated battery too broad to be crime of violence because it is general intent crime and least culpable means of violating falls outside generic definition);  *United States v. Ocampo-Cruz*, 561 Fed. App'x 361, 365–66 (5th Cir. 2014) (unpublished) (finding North Carolina aggravated assault is not crime of violence due to lesser mental state required); *Bennett v. United States*,  2016 U.S. Dist. LEXIS 87254 (D. Maine July 6, 2016) (unpublished) (rejecting *Voisine* and *Castleman* arguments and finding Maine aggravated assault is not violent felony).

[91] 807 F.3d 463 (1st Cir. 2015).

[92] *Id.* at 468.

[93] *Id.* at 469.

[94] *Id.* at 470.

purposes and are doing different work," the court rejected the *Castleman* argument and found the Connecticut assault statute was not a crime of violence.[95]

Where *Castleman*'s holding was limited to the definition of "force" in 18 U.S.C. § 922(g)(9), it in no way abrogates *Perez-Vargas* or *Leal-Rax*.  Thus, the Court must follow *Perez-Vargas*, and should follow *Leal-Rax*.

      B.      Utah's attempted murder statute does not require the use or attempted use force against a person—and "attempt" in Utah is overbroad.

The government argues Utah's attempted murder statute is a crime of violence because it requires a reckless and depraved indifference to serious dangers posed to human life.  But under the force clause, the statute must require as an element, the use or threatened or attempted use of violent, physical force against the person of another.

The plain language of Utah's murder statute shows it to be too broad.  For example, the statute criminalizes knowingly causing the death of another.[96]  But, hearkening back to *Perez-Vargas*, a person can knowingly cause the death of another without using violent, physical force or threatening violent, physical force against that person.  For example, a person could be convicted of this statute for refusing to prepare food for an invalid partner.  Yet such an action does not require the use or threat of physical force and, thus, could not qualify as a crime of violence under the force clause.  The statute requires neither that force be used or threatened nor that any force that may happen to be used or threatened be *violent* force.

The greater problem in Mr. Montoya's case is that he was convicted of *attempted* murder.  And the definition of attempt in Utah is too broad, as it includes preparatory steps.  The government

---

[95] *Id.* at 471.

[96] Utah Code Ann. § 76-5-203(2)(b).

makes a summary comparison between the Utah's definition of attempt and the definition in the Model Penal Code and concludes that because they are "similar," Utah attempt fits within the generic definition of attempt.[97]  But the analysis must go deeper.  What matters is whether the application of Utah's attempt statute sweeps more broadly than the generic definition allows.  Long ago, the Tenth Circuit, in *United States v. Strahl*,[98] concluded that it does.  Even though the Utah attempt statute at issue in *Strahl* required the same *mens rea* as required by the underlying offense, the court concluded Utah attempted burglary could not be crime of violence because a person could be convicted for an attempted offense after taking only preparatory steps.[99]  The government fails to address the *Strahl* case at all.

1.   *That murder was listed in the commentary to § 4B1.2 has no effect because the commentary was meant to assist with the now-defunct residual clause and has no independent definitional value.*

The government also asserts that the fact that murder was listed in the commentary to guideline § 4B1.2 has significance in the analysis.  At the outset, this argument is problematic because even though murder was listed in the commentary, *attempted* murder was not—and, as indicated above, this difference is significant.  Moreover, the listing of murder in the commentary has no effect because Mr. Montoya's offense was not enumerated in the *actual text* of § 4B1.2.  For this reason, the government's characterization of Mr. Montoya's offense as "enumerated" is

---

[97] *See* Doc. 10, at 15.

[98] 958 F.2d 980 (10th Cir. 1992); *see also United States v. Martinez*, 602 F.3d 1166, 1170 (10th Cir. 2010) (finding Arizona attempted burglary is not violent felony under ACCA even though burglary is enumerated; it only qualified under residual clause of § 4B1.2).

[99] *Id.* at 986; *see also State v. Pearson*, 680 P.2d 406, 407 (Utah 1984) (finding evidence sufficient to constitute attempted burglary and robbery where defendant was arrested riding in car on way to commit offense and possessed gloves and tape).

somewhat misleading.  Only "burglary of a dwelling, arson, or extortion" or crimes involving the use of explosives are enumerated in the text of § 4B1.2.[100]  The fact that murder appears only in the commentary is significant because both the Supreme Court and Tenth Circuit have held that commentary is valid only if consistent with the text of the guideline.  Because the sole purpose of the commentary at issue here was to assist in the interpretation of the residual clause, now, a conviction listed in the commentary must either satisfy the force clause or be enumerated in the actual guideline text to be considered a crime of violence.

In *Stinson v. United States*,[101] the Supreme Court concluded guideline commentary is only valid and authoritative if: (1) it interprets a guideline, (2) it is not inconsistent with or is a plainly erroneous reading of that guideline, and (3) it does not violate the Constitution or a federal statute.[102]  This is because Congress did not expressly authorize the issuance of commentary, and there is no requirement that Congress review or approve it.[103]  Otherwise, the sentencing commission could issue commentary that changes the meaning of a guideline, with no accountability to Congress.  In its brief, the government failed to even acknowledge *Stinson* or the limitations it places on guideline commentary.

---

[100] USSG § 4B1.2(a)(2).

[101] 508 U.S. 36 (1993).

[102] *Id.* at 45, 47.  Where "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline."  *Id.* at 43.

[103] *Id.* at 40–41.

The *Stinson* rule is reflected in the Tenth Circuit's cases.  In *United States v. Martinez*,[104] the Tenth Circuit relied on the residual clause to affirm an "attempt" conviction based on the commentary to the guidelines.  As the court explained, the guideline commentary at issue could be understood either as a "definitional provision" or as a reflection of "the Sentencing Commission's view that when an offense is a crime of violence, so is attempting the offense . . . because it presents a 'serious potential risk of physical injury to another' comparable to that presented by the completed offense."[105]  In *James v. United States*,[106] a case explicitly overruled by *Johnson*, the Supreme Court assumed it was the latter.[107]  And the Tenth Circuit later recognized guideline commentary can not expand the reach of a substantive definition in *United States v. Armijo*.[108]  In *Armijo*, the government argued that Colorado manslaughter qualified as a crime of violence because manslaughter was specifically enumerated in the application notes.[109] But the Court explicitly rejected this argument.[110]

The government, however, ignores *Stinson* entirely and asks the Court to instead give force to the guideline commentary based solely on *dicta* in *Madrid* and pre-*Johnson* cases from

---

[104] 602 F.3d 1166 (10th Cir. 2010).

[105] *Id.* at 1174.

[106] 550 U.S. 192 (2007).

[107] *Id.* at 206–07.

[108] 651 F.3d 1226 (10th Cir. 2011).

[109] *Id.* at 1234.

[110] *Id.* at 1236–37.  "To read application note 1 as encompassing non-intentional crimes would render it utterly inconsistent with the language of § 4B1.2(a) . . . ."  *Id.* at 1236.

other circuits.[111]  The government's focus on *Madrid* arises from the fact that in outlining the circumstances under which an offense is a crime of violence under the guidelines, the Tenth Circuit noted it can qualify as such when it is an offense "enumerated in the Guidelines or accompanying commentary."[112]  The government seizes on this language as proof positive that, despite *Stinson*, guideline commentary is authoritative.  But this reliance is problematic.  For one thing, this statement is mere *dicta* at best.  It does not reflect a position argued by either party or decided by the court.  For another thing, in the exact same paragraph, the Tenth Circuit also points to the residual clause as way in which an offense can be considered a crime of violence.  Yet later in the same case, the court finds *Johnson* invalidated the residual clause in the guidelines.[113]  In other words, the court's outline in that paragraph is not an accurate statement of current law.  And most importantly, this *dicta* does nothing to address, analyze, or change the requirements of *Stinson*.  Now that the residual clause has been invalidated, under *Stinson* and *Armijo*, an offense can be a crime of violence only if it fits within the force clause or the enumerated offenses clause.  The fact that an offense appears in commentary is irrelevant after *Johnson*.

In its brief, the government neglects to address either of the two published circuit court opinions ruling consistently with Mr. Montoya's position.  First, the First Circuit held that because *Johnson* invalidates the residual clause in § 4B1.2(a)(2), Application Note 1 in the commentary "has become inconsistent with the remaining text of the Guideline itself," and thus "provides no

---

[111] *See* Doc. 10, at 13 n.68 (citing pre-*Johnson* cases).

[112] *Madrid*, 805 F.3d at 1207.

[113] *See id.* at 1211.

basis" to conclude that passive possession of a firearm described in 26 U.S.C. § 5845(a) is a crime of violence under § 4B1.2, even though the offense is listed in the commentary.[114]  And the Seventh Circuit recently reached the same conclusion in *United States v. Rollins*.[115]  In *Rollins*, the court concluded that "Application note 1 has no legal force independent of the guideline itself," specifically holding:

> [T]he application notes are *interpretations of*, not *additions to*, the Guidelines themselves; an application note has no *independent* force.  Accordingly, the list of qualifying crimes in application note 1 to § 4B1.2 is enforceable only as in interpretation of the definition of the term "crime of violence' in the guideline itself.  More specifically, the Sentencing Commission has interpreted the *residual clause* in § 4B1.2(a)(2) to include the specific crimes listed in application note 1. . . . [B]ecause the residual clause in § 4B1.2(a)(2) is unconstitutional, the application note's list of qualifying crimes is inoperable . . . .[116]

Put differently, any reliance on the guideline commentary is reliance on a provision interpreting the residual clause.  After *Johnson*, the residual clause cannot be used to justify the inclusion of the offenses listed in the commentary.  And as discussed above, even if the commentary to the guidelines was still valid, the offense of attempted murder is broader than the generic definition and does not satisfy the force clause.

    C.      The government uses the modified categorical approach improperly.

---

[114] *United States v. Soto-Rivera*, 811 F.3d 53, 62 (1st Cir. 2016).  A court in this district has made the same determination.  In *United States v. Traversa*, No. 2:15-cr-44 (Doc. 35), 2015 WL 6695662 (D. Utah Nov. 3, 2015) (unpublished), the court allowed a defendant to withdraw his plea, rejecting the government's argument that a robbery conviction that failed to satisfy the force clause could be a crime of violence based solely on the commentary.  *Id.* at *4 n.3 (citing *Stinson* and *Armijo*).

[115] ___ F.3d ___, 2016 WL 4587028, *1 (7th Cir. 2016) (*en banc*).

[116] *Id.* at *4 (emphasis in original).

In the end of its statutory arguments, the government references the modified categorical approach.  Although the government correctly points out the Court can only turn to the modified categorical approach if a statute is divisible,[117] the government makes no attempt to argue or demonstrate how either of the Utah statutes at issue are divisible—if at all.  For this reason, the Court should entirely disregard the government's arguments regarding the modified categorical approach.

In structuring its final argument in this manner, the government misconstrues the nature of the modified categorical approach and acts as if "facts" from the underlying documents have independent power—presumably with the idea that it is permissible for the Court to review whether Mr. Montoya's actual means of committing the crimes fall within the generic definition of aggravated assault.  But this approach has clearly been prohibited "for more than 25 years."[118] The "sole and limited purpose" of the modified categorical approach's "peek" at the record is "to discover which of the enumerated alternatives played a part in the defendant's prior conviction," so the court can "compare that element (along with all others) to those of the generic crime."[119]

> In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque.  It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.[120]

---

[117] Doc. 10, at 32.

[118] *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016).

[119] *Id.* at 2256, 2257.

[120] *Id.* at 2253–54.

Even if the modified categorical approach were permissible here, the government makes no attempt to show how the elements of the statutory subsections applicable to Mr. Montoya are the same as, or narrower, than the generic offenses of assault by a prisoner or attempted murder. Where the government has made no attempt to show how these provisions are divisible, it can only have recited the factual grounds of Mr. Montoya's convictions in an attempt to fit the facts of his offense within the elements of a generic offense—an approach explicitly prohibited. Put differently, where the government fails to explain—or argue how or why or if—either of the statutes or subsections at issue are divisible,[121] this Court cannot make such a finding. Thus, the modified categorical approach would be improper here and the actual facts of Mr. Montoya's prior crimes are irrelevant.

## CONCLUSION

Where Mr. Montoya has shown both that his sentence rested on the residual clause and that *Johnson* applies retroactively to challenges brought under the sentencing guidelines on collateral review, this Court should grant his petition. This is particularly true where the government has failed to establish Mr. Montoya's prior offenses qualify as crimes of violence. In light of this, Mr. Montoya respectfully asks the Court to grant his § 2255 petition and schedule a resentencing hearing.

RESPECTFULLY SUBMITTED this 27th day of October 2016.

*/s/ Daphne A. Oberg*
DAPHNE A. OBERG
Assistant Federal Public Defender

---

[121] This Court should reject whatever argument the government is trying to make on its face, as inadequately briefed. *See United States v. Morris*, 562 F.3d 1131, 1133 n.1 (10th Cir. 2009) ("We decline to address arguments that are not briefed or are inadequately briefed.")